## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **AMERICAN SPORTS COUNCIL** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 11-1347 (ESH)** |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **EDUCATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

### MEMORANDUM OPINION

Plaintiff American Sports Council has sued the Department of Education and the Secretary of Education ("defendants") alleging that they violated the Administrative Procedure Act, 5 U.S.C. § 706 *et seq.* ("APA"), when they denied plaintiff's Petition to Repeal, Amend, and Clarify Rules Applying Title IX to High School Athletics ("Petition").  Plaintiff seeks declaratory and injunctive relief to prevent defendants from applying their rules implementing Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), to high schools.

Defendants have moved to dismiss for lack of subject matter jurisdiction on the ground that plaintiff lacks standing to pursue its claims, or, in the alternative, for failure to state a claim. For the reasons that follow, the Court concludes that plaintiff lacks standing and therefore, it will grant defendants' motion.

## BACKGROUND

In 1972, Congress passed Title IX, which provides that, subject to certain limitations, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).  Congress amended Title IX in 1974 with language requiring the Department of Health, Education, and Welfare ("HEW")[1] to promulgate implementing regulations.  Education Amendments of 1974, Pub. L. No. 93-380, § 844, 88 Stat. 484, 612 (1974).  HEW issued these regulations, 40 Fed. Reg. 24128 *et seq.* (June 4, 1975), and subsequently issued a 1979 Policy Interpretation, 44 Fed. Reg. 71413 *et seq.* (Dec. 11, 1979) ("Three-Part Test"), to guide institutions on how to comply with Title IX.[2]  The Department also issued policy clarifications to the Three-Part Test in 1996, 2003, 2005, and 2010.  (Compl. ¶ 13.)

---

[1] Congress established the Department of Education as a successor to HEW in The Department of Education Organization Act, Pub. L. No. 96-88, § 201, 93 Stat. 668, 674 (1979).

[2] The Three-Part Test provides:

> Compliance [with Title IX] will be assessed in any one of the following ways: (1) Whether intercollegiate level participation opportunities for male and female students are provided  in numbers substantially proportionate to their respective enrollments; or (2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interests and abilities of the members of that sex; or (3) Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a history and continuing practice of program expansion, as described above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Fed. Reg. 71418 (Dec. 11, 1979).

Plaintiff American Sports Council is a "coalition of coaches, athletes, former-athletes, parents, and fans" organized as a nonprofit in the District of Columbia.  (Compl. ¶ 4.)  Plaintiff and its predecessor organization (College Sports Council) have advocated reform or repeal of defendants' 1979, 1996, 2003, and 2005 guidance.  (*See* Compl. ¶ 4; Defs.' Mem. in Support of Mot. to Dismiss ("Defs.' Mot."), at 1-2.)  Having failed in its prior efforts, plaintiff petitioned defendants on June 19, 2007, pursuant to the APA, 5 U.S.C. § 553(e), to initiate rulemaking that would "rescind existing application of the Three-Part Test to high school athletics."[3]  (Pl.'s Opp'n at 12; *see also* Compl. Ex. 1, at 3, 13-15.)  In a four-page letter dated March 27, 2008, former Secretary of Education Margaret Spellings declined plaintiff's Petition.  (Compl. Ex. 2.)

On July 21, 2011 plaintiff filed a complaint for declaratory and injunctive relief seeking (1) declarations that defendants' petition denial violates the APA, 5 U.S.C. § 706(2)(A), (2)(B); (2) an injunction preventing defendants from using the Three-Part Test with respect to high schools; and (3) an injunction requiring the Department to initiate rulemaking in accordance with plaintiff's Petition.  (Prayer for Relief ¶¶ 1-5).  Before the Court is defendants' motion to dismiss the complaint.  Under Rules 12(b)(1) and 12(b)(6), given the Court's holding that plaintiff lacks standing, it need not address defendants' alternative motion to dismiss for failure to state a claim.

## ANALYSIS

## I.    LEGAL STANDARD

Defendant's motion to dismiss for lack of Article III standing challenges fulfillment of an "essential and unchanging predicate to any exercise of our jurisdiction."  *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (internal citations and quotation marks

---

[3] Plaintiff asserts that a petition to rescind existing application of a rule is distinct from a petition that seeks to initiate rulemaking proceedings.  (*See* Pl.'s Opp'n at 12.)  This distinction is semantic, as the APA defines a petition for rulemaking as a "petition for the issuance, amendment, *or repeal* of a rule" (emphasis added).  5 U.S.C. § 553(e)

omitted).  "For purposes of ruling on a motion to dismiss for want of standing, both the trial and

reviewing courts must accept as true all material allegations of the complaint, and must construe

the complaint in favor of the complaining party."  *Muir v. Navy Federal Credit Union,* 529 F.3d

1100, 1105 (D.C. Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (quoted in

parenthetical).  Plaintiff bears the burden of establishing proper standing "at the outset of a case."

*Sierra Club v. EPA*, 292 F.3d 895, 901 (D.C. Cir. 2002).

In alleging facts sufficient to establish the "irreducible constitutional minimum" of

Article III standing, plaintiff must demonstrate that it or those it represents suffered an injury-in-

fact, the cause of which is fairly traceable to the defendants' challenged conduct, and which a

favorable judicial decision would likely redress.  *See Ctr. for Law and Educ. v. Dep't of Educ.*,

396 F.3d 1152, 1157 (D.C. Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

61 (1992)).  A "mixture of speculation and conclusory assertion . . . does not satisfy the Supreme

Court's requirement for 'specific, concrete facts' demonstrating injury, and 'particularized

allegations of fact.'"  *Block v. Meese*, 793 F.2d 1303, 1308 (D.C. Cir. 1986) (quoting *Warth*, 422

U.S. at 508).

When causation and redressability "hinge on the independent choices of [a] regulated

third party, 'it becomes the burden of the plaintiff to adduce facts showing that these choices

have been or will be made in such manner as to produce causation and permit redressability of

injury.'"  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir.2004)

("*NWCA*") (quoting *Lujan*, 504 U.S. at 562).  A plaintiff has not shown a redressable injury, and

therefore lacks Article III standing, when "it is purely speculative that a requested change in

government policy will alter the behavior of regulated third parties that are the direct cause of the

plaintiff's injuries."  *Id.* at 938 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)).

On the other hand, a plaintiff's injury is redressable when "the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury" alleged.  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C.Cir.1996) (citation omitted).

In an effort to defeat defendants' Rule 12(b)(1) motion, plaintiff claims it has standing to bring this suit as: (1) an agency petitioner independently injured by defendants' refusal to grant plaintiff's requested rulemaking (*see* Pl.'s Opp'n at 1-2); (2) a representative of members who have purportedly suffered cognizable injury as a result of defendants' refusal to grant plaintiff's requested rulemaking (*see* Pl.'s Opp'n at 7-9); and (3) an organization that has itself suffered a cognizable injury as a result of defendants' refusal.  (*See* Pl.'s Opp'n at 9-11.)

## II.   STANDING BASED ON DENIAL OF PETITION FOR RULEMAKING

Under APA § 553(e), "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  5 U.S.C. § 553(e).  Plaintiff alleges that defendants' denial of its § 553(e) Petition violated the APA, and was thus itself a cognizable injury conferring constitutional standing.  (*See* Compl. ¶¶ 4, 18, 29; Pl.'s Opp'n at 1-2.)  This theory cannot survive in light of extensive Circuit precedent holding that "the grant of a procedural right alone cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of [petitioner's] that is the ultimate basis of his standing."  *Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) (alteration in original) (citing *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002) ("*Fund Democracy*")); *see also Hydro Investors, Inc. v. FERC*, 351 F.3d 1192, 1197 (D.C. Cir. 2003) ("*Hydro*"); *Shipbuilders Council of Amer. v. United States*, 868 F.2d 452, 456 n.3 (D.C. Cir. 1989).  Because plaintiff has not satisfied this test, its claim to standing based on denial of its Petition must fail.

The Circuit was presented with an argument similar to the one plaintiff makes here in
*Gettman*.  In that case, the DEA denied a petition by John Gettman and High Times Magazine to
initiate rulemaking proceedings to reschedule marijuana under 21 U.S.C. § 811(a).  290 F.3d at
432.  The plaintiffs contended that because 21 U.S.C. § 811(a)(2) permitted "any interested
party" to file a petition to initiate rulemaking, they had "automatic standing" to appeal the DEA's
denial of their petition in federal court.  *Id.* at 433.  The Circuit separated its standing inquiry
from the DEA's petition denial, holding that even given the DEA's petition denial, "unless
petitioners can demonstrate an injury in fact . . . they lack standing to appear before an Article III
court."  *Id.* at 434.  Plaintiff distinguishes *Gettman* by pointing to the Circuit's decision to uphold
dismissal of the plaintiff magazine's claim on the grounds that the magazine lacked associational
standing (*see* Pl.'s Opp'n at 9), but this distinction is inapposite because the Circuit separately
rejected an argument that the DEA's refusal to initiate rulemaking alone conferred Article III
standing on the plaintiffs.  *Id.* at 433.

The Circuit came to a similar conclusion in *Fund Democracy*, in which an advocacy
organization attempted to intervene in the SEC exemption proceeding of a company, but the SEC
declined to give the plaintiff a hearing and granted the exemption.  278 F.3d at 23-25.  Plaintiff
then brought suit and alleged that it had standing to sue as an "interested person" to whom
Congress intended to grant a right to a hearing before the SEC.  *Id.* at 27; *see also* 17 C.F.R.
270.0-5.  Consistent with *Gettman*, the Circuit held that even assuming Congress had intended to
grant to plaintiff the statutory right to intervene in an SEC exemption proceeding, "the
deprivation of that right does not alone confer Article III standing."  *Fund Democracy*, 278 F.3d
at 28 ("Fund Democracy has no standing" to bring suit for review of SEC order when only
grounds for standing is adverse order itself).

Section 553(e) of the APA permits plaintiff to petition defendants for rulemaking just as a federal statute, 21 U.S.C. § 811(a), permitted Gettman to petition the DEA for rulemaking and federal regulations, 17 C.F.R. 270.0-5, permitted Fund Democracy to petition for a hearing in SEC exemption proceedings; but as *Gettman* and *Fund Democracy* recognized, the right to petition agencies is not alone sufficient to confer standing for purposes of review in federal court. *See Gettman*, 290 F.3d at 434; *Fund Democracy*, 278 F.3d at 28.  The Circuit precedent is clear—plaintiff must demonstrate an underlying cognizable injury, aside from the petition denial itself, to seek review of that denial in federal court.

Furthermore, plaintiff's assertion that the APA authorizes judicial review here does not reinforce its claim to standing based solely on denial of its Petition.  (*See* Compl. ¶ 18.)  In *Hydro*, a developer of hydroelectric power projects petitioned FERC as an "interested part[y]" under the Federal Power Act, 16 U.S.C. § 825e, alleging that a licensing arrangement between two other corporations violated distinct provisions of the Federal Power Act.  351 F.3d at 1194. FERC rejected all of the developer's claims and the developer subsequently brought suit alleging that FERC "has failed to regulate [the relevant] projects in accordance with the Federal Power Act."  *Id.*  The Circuit held that although the Federal Power Act grants the right to petition FERC to any person complaining of a violation of the Act, FERC's denial of such a petition was not alone sufficient grounds to demonstrate Article III standing—even if the denial created a statutory right to judicial review under the Federal Power Act.  *Id.* at 1197.  In so ruling, the Circuit noted that "[i]f the petitioner has no Article III concrete interest in receiving the relief requested before the agency, this Court has held, Congress has no power to grant a petitioner a right to seek judicial review of an agency's decision to deny him relief."  *Id.* (citing *Gettman*, 290 F.3d at 433; *Fund Democracy*, 278 F.3d at 27-28).

*Hydro* reasoned that if denial of an agency petition were alone sufficient to confer standing on the petitioner, Congress could perform an end run around the Article III "cases" or "controversies" requirement by granting a right to petition agencies to tangential parties. *See id.* Thus, even assuming *arguendo*, as plaintiff alleges, that the APA "grants the right of judicial review to interested parties when an agency denies a petition to rescind a rule" (Compl. ¶ 18), Congress would have no power to grant petitioner this right when, as here, plaintiff has no underlying Article III interest in receiving the relief requested in its Petition.[4] Regardless of whether Congress intended to grant plaintiff the right to judicial review under the APA, plaintiff cannot have standing to bring this suit solely on the basis of defendants' denial of its Petition.

Plaintiff's attempts to distinguish *Hydro* and *Fund Democracy* are unavailing. Plaintiff attempts to limit both *Hydro* and *Fund Democracy* to a petitioner who was not a party, noting that the *Hydro* plaintiff "was not directly involved in the petitioned for matter" and that the *Fund Democracy* plaintiff "did not have a concrete interest in the exemption petition filed by the investment company with the SEC." (*See* Pl.'s Opp'n at 6.)  Yet *Hydro* clearly stated, without reference to plaintiff's interest *vel non* in the matter before FERC, that a petitioner "has not been independently wronged simply because the agency denied his advisory request." 351 F.3d at 1197. *Fund Democracy* similarly found that "[p]articipation in agency proceedings is alone insufficient to satisfy judicial standing requirements." 278 F.3d at 27.  Furthermore, even granting that plaintiff has a relatively heightened interest in its Petition as compared to the plaintiffs in *Hydro* and *Fund Democracy*, the proper question for this Court is whether plaintiff

---

[4] It is far from clear that Congress intended to grant the right to judicial review to disappointed agency petitioners who have not independently met the prerequisites for Article III standing.  In fact, the language of the APA provision granting the statutory right to judicial review demonstrates just the opposite, since Congress recognized cognizable injury to be a necessary prerequisite to such review. *See* 5 U.S.C. § 702 ("*A person suffering legal wrong* because of an agency action . . . is entitled to judicial review thereof.") (emphasis added).

has suffered an injury cognizable under Article III, and not whether plaintiff has a direct and concrete interest in filing an agency rulemaking petition.  *See Gettman*, 290 F.3d at 433 ("The sufficiency of the sort of 'interest' allowing an interested party to petition an agency at the will of Congress and the justicially protectable 'interest' required for an inquiry to afford standing in the courts is fundamentally the difference between the political branches on the one hand and the Article III courts on the other.").  Plaintiff's status as the sole interested petitioner in this case does not alter its obligation to show an underlying cognizable injury aside from the petition denial.

In the face of this well-established precedent, plaintiff relies on a case it previously litigated—*College Sports Council v. Department of Education*, 357 F. Supp. 2d 311 (D.D.C. 2005), *rev'd per curiam*, 465 F.3d 20 (D.C. Cir. 2007) ("*CSC*")—which is factually similar to this one.  The story of *CSC* dates back to *NWCA*, 263 F. Supp. 2d 82 (D.D.C. 2003), *aff'd*, 366 F.3d 930 (D.C. Cir. 2004).  In *NWCA*, the Circuit affirmed the district court's dismissal for lack of standing of the plaintiff men's college wrestling advocates' statutory and constitutional claims that the Department of Education and other defendants unlawfully applied the Three-Part Test to college athletic programs.  366 F.3d at 949.  The Circuit reasoned that while the plaintiffs alleged that the defendants' application of the Three-Part Test to colleges led to elimination or reduction of men's wrestling teams, the injury "results from the independent decisions of federally funded educational institutions that choose to eliminate or reduce the size of men's wrestling teams in order to comply with Title IX."  *Id.* at 933.  More relevant to plaintiff's argument here, Judge Emmet G. Sullivan of this Court in *NWCA* accepted a theory of automatic standing by finding that "improper denial of a petition brought under 5 U.S.C. § 553(e) constitutes a concrete and particularized injury, directly caused by the agency to which the petition was addressed, and

redressable by this Court through remand to the agency for proper consideration of the petition."

263 F. Supp. 2d at 126. [5]  As to this holding by Judge Sullivan, the Circuit found that the

plaintiffs had not properly petitioned the defendant for repeal or amendment of the Three-Part

test, and that a new petition pending before the defendants was not ripe for review.  *NWCA*, 366

F.3d at 949.  Thus, the Circuit did not reach the automatic standing argument which the district

court had endorsed.

A year later in *CSC*, plaintiffs sought review for claims substantially similar to those in

*NWCA*.  *See* 357 F. Supp. 2d at 311; (*see also* Compl. ¶ 4.)  Judge Sullivan dismissed several of

these claims as *res judicata*, but this time he rejected the argument that the Department of

Education's denial of a new petition to repeal the Three-Part Test as applied to college athletics

alone conferred standing on plaintiffs.  *CSC*, 357 F. Supp. 2d at 313.  Addressing plaintiffs'

claim of automatic standing in light of the Circuit's *Gettman* and *Shipbuilders* rulings, Judge

Sullivan departed from *NWCA* to hold that "[a]lthough APA § 553(e) requires agencies to

receive and consider rulemaking petitions from interested persons, the provision does not

independently create jurisdiction to challenge denials of such petitions."  *Id.*  On appeal, the

Circuit upheld partial dismissal on *res judicata* grounds, but found that the "District Court

erroneously concluded that appellant College Sports Council lacked standing to seek judicial

review of the Department's denial of the petition to initiate rulemaking" and remanded with

instructions to review the merits of the plaintiff's petition denial claim under an "'extremely

limited' and 'highly deferential'" standard of review. *CSC*, 465 F.3d at 23 (citing *WWHT, Inc. v.*

---

[5] While this holding supports plaintiff's theory of automatic standing, as explained herein, this
Court does not find it persuasive.  It conflicts with the Circuit's guidance in *Gettman*, *Fund
Democracy*, *Hydro*, and *Shipbuilders*, it was never explicitly affirmed by the Circuit, and
ultimately Judge Sullivan reversed himself in his subsequent decision in *CSC*.  *See* 357 F. Supp.
2d at 313.

*FCC*, 656 F.2d 807, 818 (D.C. Cir. 1981)).  Plaintiff voluntarily dismissed the suit before

proceedings on remand, and now, over three years later, plaintiff brings this suit, again attacking

the Three-Part Test claiming standing based on the denial of a petition.  (*See CSC*, Notice of

Voluntary Dismissal, No. 03-2588 [Dkt. 37].)

     *CSC* is not dispositive, for it did not hold, as plaintiff argues, that standing can be based

solely upon defendants' denial of its Petition.  With regard to denial of the *CSC* plaintiff's

petition for rulemaking, the Circuit only held that "[t]he judgment in [*NWCA*] is not *res judicata*

as to this issue, and . . . the allegations of the complaint are sufficient to confer standing to bring

this new claim." *CSC*, 465 F.3d at 23.  Although the Circuit provided no explanation for finding

the *CSC* complaint sufficient to confer standing, there are obvious differences between that case

and this one which undercut plaintiff's argument here, despite *NWCA*'s prior holding that

plaintiff lacked standing to challenge the Three-Part Test's application to college athletics.

     The *CSC* complaint included (1) an affidavit and facts indicating a nexus between the

Three-Part Test and school decisions to cut programs that affected CSC members, (2) a claim

that the College Sports Council intended to pursue administrative complaints against schools if

the relief requested were to be granted, and (3) allegations of unlawful interference by the

government in interactions between members of the College Sports Council and individual

schools. (*See CSC*, Am. Compl., No. 03-2588, at ¶¶ 18-32 (July 30, 2004)). As the College

Sports Council itself argued before the Circuit (*see* Appellants' Corrected Brief, No. 05-5133, at

14-29 (March 15, 2006)), all of these allegations in favor of a finding of standing could lead a

court to conclude that the defects in standing outlined in *NWCA* were cured in the *CSC*

complaint.  In other words, the *CSC* complaint alleged facts showing some underlying

cognizable injury, not foreclosed by *res judicata* and independent from the denial of plaintiff's

11

petition for rulemaking, upon which the Circuit may have based standing. In this case, plaintiff

limits its standing allegations to the conclusory statements that "the Council has standing for

declaratory and injunctive relief to sue the Department over the denial of its Petition" and that

the "APA grants the right of judicial review to interested parties when an agency denies a

petition to rescind a rule."  (Compl. ¶¶ 4, 18.)  The differences between the allegations in the

*CSC* complaint and those in this case counsel against a conclusion that the Circuit's unexplained

decision in *CSC* should be interpreted as an implicit reversal of *Hydro*, *Fund Democracy*,

*Gettman*, and *Shipbuilders*.[6]

Moreover, the Circuit in *CSC* at no point endorsed the theory that denial of a rulemaking

petition automatically confers standing;[7] it only announced that "'[R]efusals to institute

rulemaking proceedings . . . are subject to a judicial check." *CSC*, 465 F.3d at 23 (alterations in

original) (quoting *Nat'l Customs Brokers & Forwarders Ass'n of Amer., Inc. v. United States*,

883 F.3d 93, 96 (D.C. Cir. 1989) ("*National Customs Brokers*")).  *National Customs Brokers*

---

[6] Because the Circuit in *CSC* neither sat en banc nor asserted that the full Circuit had been consulted on the issue, an implicit reversal of this sort would be anathema.  *See United States v. Caldwell*, 543 F.2d 1333, 1370 n. 19 (D.C. Cir. 1974) (citations omitted) (The Circuit "has long adhered to the rule that a recent decision of one panel may not be overruled by another panel, but only by the court en banc."); *Irons v. Diamond*, 670 F.2d 265, 268 n. 11 (D.C. Cir. 1981) (One panel may reverse another on a discrete point of law provided that the reversal "resolves an apparent conflict between two prior decisions" and "has been separately considered and approved by the full Court.")

[7] This argument was briefed before the Circuit in *CSC* because the Department of Education contended that the district court correctly held that a petition denial was alone insufficient to confer standing.  (*See* Brief for Appellees, No. 05-5133, at 16-17 (Feb. 27, 2006)).  College Sports Council rebutted this assertion only by contending that the district court made "inconsistent decisions" when it credited plaintiffs-appellants' automatic standing argument in *NWCA*, 263 F. Supp. 2d at 126, but not in *CSC*, 357 F. Supp.2d at 313.  (*See* Appellants' Corrected Reply Brief, No. 05-5133, at 10 (March 15, 2006)).  College Sports Council argued that a ruling by the Circuit that petition denial did not automatically confer standing "would suggest that the *NWCA* petition-denial holding exceeded the Court's jurisdiction, perhaps freeing the district court to consider the *NWCA* plaintiffs' Rule 60(b) motion."  (*Id.* at 10-11.)

only notes that refusals to initiate rulemaking are not presumptively unreviewable like nonenforcement decisions, but it does *not* stand for the proposition that denials of rulemaking petitions are sufficient to confer standing. 883 F.3d at 96 ("While *Heckler v. Chaney*, 470 U.S. 821 (1985), teaches that nonenforcement decisions are presumptively unreviewable, we recently clarified that refusals to institute rulemaking proceedings remain outside *Chaney*'s core and are subject to a judicial check.").

To interpret *CSC*'s holding and its citation to *National Customs Brokers* to mean that plaintiff has standing based solely on defendants' denial of its Petition would contravene Circuit precedent that requires plaintiff to demonstrate an underlying injury to satisfy the requirements of Article III.  Consistent with that precedent, this Court finds that since petitioners cannot "demonstrate an injury in fact, both particularized and concrete, as required by the Constitution, they lack standing to appear before an Article III court."  *Gettman*, 290 F.3d 434.

## III.   ASSOCIATIONAL STANDING

Alternatively, plaintiff claims standing to bring this suit as the representative of "coaches, athletes, former-athletes, parents, and fans" affected by the application of the Three-Part Test. (*See* Pl.'s Opp'n at 7-9.)  The Supreme Court reaffirmed in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342 (1977), that "an association may have standing solely as the representative of its members" where, *inter alia*, its members would have standing to sue in their own right.  *See also Fund Democracy*, 278 F.3d at 25-26 (applying *Hunt* test); *Am. Legal Found. v. FCC*, 808 F.2d 84, 89 (D.C. Cir. 1987) (same).  In *Hunt*, the Supreme Court granted associational standing to a statutorily-created commission that lacked formal members because the commission effectively represented Washington state apple growers who themselves had standing to sue.  432 U.S. at 342.

13

Plaintiff has not alleged facts sufficient to show that any one of the individuals or entities it claims to represent has standing to sue in its own right, defeating its claim to associational standing.[8]  The only potentially cognizable injuries to purported members that plaintiff alleges, albeit in a conclusory fashion, are that defendants' "application of the three-part test to high school athletics will result in reductions in beneficial athletic opportunities for student-athletes, and fewer coaching opportunities" (Compl. ¶ 21) and that plaintiff's purported members "have been, are, and will be directly, adversely, and irreparably affected by the Department's illegal determination to apply the Three-Part Test to high school athletics."  (Compl. ¶ 30.)

The Circuit has already rejected arguments for associational standing in the Title IX context.  *See NWCA*, 366 F.3d at 933-34.  Difficulties with the lack of concreteness, particularity, and immediacy of the alleged injuries notwithstanding, causation and redressability here "hinge on the independent choices" of a third party to this suit, the federally-funded high schools that fall under defendants' regulations.  *Id.* at 938.  "The Supreme Court has made it clear that 'when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.'"  *Id.* at 933 (quoting *Lujan*, 504 U.S. at 562).

Plaintiff does not claim to represent the direct object of defendants' regulations.  In light of the Circuit's decision in *NWCA*, plaintiff also fails to allege sufficient facts showing that defendants' actions either caused injuries to those whom it does claim to represent, or that such

---

[8] Defendants assert that plaintiff is a "member" association, while plaintiff portrays itself as a "non-member" association. (*See* Defs.' Rep. at 8-9; Pl.'s Opp'n at 11.)  Whether plaintiff actually has members is irrelevant to disposition of the associational standing claim, since the Circuit has construed *Hunt* to require all organizations claiming such standing to demonstrate that at least one purported member has standing to sue in its own right. *See American Library Ass'n v. FCC*, 406 F.3d 689, 696 (D.C. Cir. 2005); *Fund Democracy*, 278 F.3d at 25-26; *Am. Legal Found.*, 808 F.2d at 89. Plaintiff has not fulfilled this requirement.

injuries could be redressed by a favorable decision from this Court.  Moreover, plaintiff's

Petition calls for a repeal as applied to high schools of the 1979, 1996, 2003, and 2005

regulations, but neither Title IX itself nor the 1975 implementing regulations.  (*See* Compl. Ex. 1

at 1).  Thus, even if this Court were to grant the sought-after relief and order defendants to

initiate rulemaking pursuant to plaintiff's Petition, third party high schools "would still have the

discretion to eliminate [plaintiff's members'] programs, as necessary, to comply with the gender

equity mandate of Title IX."  *See NWCA*, 366 F.3d at 933.  The standing claims of plaintiff's

purported members, and thus plaintiff's associational standing claim, are defective for precisely

the reasons set forth in *NWCA.  See id.*

     While plaintiff does assert that high school "administrators have expressed concerns over

the ramification to student athletes of having to comply with the proportionality mandates of the

Three-Part Test" (Compl. ¶ 23), those concerns do not change the fact that it is "purely

speculative that a requested change in government policy will alter the behavior of regulated

third parties that are the direct cause of plaintiff's injuries."  *See NWCA*, 366 F.3d at 938. The

identity of the regulated third parties—in *NWCA*, postsecondary institutions, and in this case,

high schools—does not alter the speculative nature of causation and redressability here.

Therefore, without demonstrating that at least one of its purported members has suffered an

injury directly caused by defendants and redressable by the relief requested, plaintiff cannot

claim associational standing.

## IV.   ORGANIZATIONAL STANDING

     Plaintiff's final theory of standing is that defendants' actions caused injury to the

organization itself, and that this injury is redressable by a favorable decision from this Court.

(*See* Pl.'s Opp'n at 9-11.)  While it is true under *Havens Realty Corporation v. Coleman*, 455

U.S. 363, 378-82 (1982), that an organization can have standing based upon cognizable injury to itself, that claim fails here for lack of causation and redressability.

"[W]e begin an inquiry into *Havens* standing by asking whether the defendant's allegedly unlawful activities injured the plaintiff's interest in promoting its mission." *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) (citation omitted).  Plaintiff alleges that defendants' refusal to rescind the Three-Part Test as applied to high school athletics frustrates its organizational mission.  (*See* Pl.'s Opp'n at 10-11.)  Yet, regardless of whether defendants' Petition denial conflicts with plaintiff's mission of "preserving and promoting opportunities for students to participate in organized athletics at the collegiate and high school levels" (Compl. ¶ 4), the "presence of a direct conflict between the defendant's conduct and the organization's *mission* is necessary—though not alone sufficient—to establish standing." *Nat'l Treasury Emp. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  To claim organizational standing, plaintiff must allege that its "activities have been impeded[,]" not just that its "mission has been compromised."  *See Abigail Alliance for Better Access v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (citation omitted).  Thus, the allegation that defendants' actions impede plaintiff's other activities by necessitating diversion of resources to combat the campaigns of "activist groups" to "apply the Three-Part Test to high school Athletics" becomes central to plaintiff's claim.  (*See* Pl.'s Opp'n at 10-11.)

There can be no organizational standing where plaintiff cannot "show 'actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'"  *Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (quoting *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).  Here, plaintiff fails to allege that its diversion of resources was "fairly traceable" to

defendants' conduct, or that a favorable court decision would redress the organizational injuries

suffered by that diversion.  Plaintiff alleges, without any supporting facts, that defendants' denial

of its Petition directly caused unregulated third parties to file administrative complaints, over two

years later, seeking application of the Three-Part Test to high school athletics.  (*See* Pl.'s Opp'n

at 10.)  In this context, causation and redressability turn on the independent decisions of third

party activist groups, meaning that plaintiff must allege additional facts linking defendants'

conduct to the third party activist groups' decisions.  As the Supreme Court stated in *Lujan*:

> When . . . a plaintiff's asserted injury arises from the government's allegedly
> unlawful regulation (or lack of regulation) of *someone else*, much more is needed.
> In that circumstance, causation and redressability ordinarily hinge on the response
> of the regulated (or regulable) third party to the government action or inaction-and
> perhaps on the response of others as well.   The existence of one or more of the
> essential elements of standing depends on the unfettered choices made by
> independent actors not before the courts and whose exercise of broad and
> legitimate discretion the courts cannot presume either to control or to predict, and
> it becomes the burden of the plaintiff to adduce facts showing that those choices
> have been or will be made in such manner as to produce causation and permit
> redressability of injury.

504 U.S. at 561–62 (internal citations and quotation marks omitted).

Based on plaintiff's pleadings, even if this Court were to grant the requested relief, the

decision of third party activist groups to file Title IX administrative complaints against school

districts would remain a matter within the discretion of those groups.  Plaintiff's failure to allege

any facts showing a link between the actions of the third party activist groups and defendants'

denial of its Petition negates a showing of any causation or redressability here.[9]  The claim that

activist groups filed complaints "[p]ursuant to the Department's failure to clarify that the Three-

---

[9] While the third parties allegedly causing plaintiff's organizational injuries are unregulated,
plaintiff still bears the heightened burden of alleging facts to show that the choices of these third
parties are caused by defendants and would be redressable by a favorable decision from this
Court. *See Lujan*, 504 U.S. at 561-62 (heightened burden when injury caused by decisions of
regulated third parties or "the response of others").

Part Test does not apply to high school athletics" (Pl.'s Opp'n at 10) is no more than "mere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct [and] 'will not suffice to invoke the federal judicial power.'" *See NWCA*, 366 F.3d at 938 (quoting *Simon*, 426 U.S. at 44).  Without showing that its organizational injury is fairly traceable to defendants' conduct or that such injury is redressable by a favorable decision, plaintiff cannot claim organizational standing.

## CONCLUSION

Plaintiff does not have standing merely by virtue of the procedural injury suffered by defendants' denial of its Petition.  In addition, plaintiff's failure to allege sufficient facts to show defendants' actions caused the relevant injuries suffered, or that a favorable court decision would redress these injuries, defeats its claims of associational and organizational standing. Therefore, this Court is without subject matter jurisdiction, and will grant defendants' motion to dismiss.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   March 27, 2012

18